**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| **Plaintiff,** | * | |
| **v.** | | **Case No.: GJH-19-1641** |
| | * | |
| **ULYSSES S. MARTIN, JR., DDS, PC,** *et al.*, | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**MEMORANDUM OPINION**

Plaintiff United States of America (the "Government") brought this action to enjoin

Defendants Ulysses S. Martin, Jr., DDS, PC and Ulysses S. Martin, Jr. (collectively

"Defendants") from continuing to operate a business without paying the associated federal

employment and unemployment taxes on employees' wages and from further violating and

interfering with the administration of the internal revenue laws. ECF No. 1. Pending before the

Court is the Government's Motion for Default Judgment, Permanent Injunction, and Other

Equitable Relief ("Motion for Default Judgment"). ECF No. 9. No hearing is necessary. *See* Loc.

R. 105.6 (D. Md. 2016). For the following reasons, the Government's Motion for Default

Judgment is granted.

## I.     BACKGROUND

Defendant Ulysses S. Martin, Jr. has owned and operated a dental practice since at least

2004. ECF No. 1 ¶ 6; ECF No. 9-2 ¶ 5. His practice is sometimes called Ulysses S. Martin, Jr.,

DDS, PC. *Id.* Employers such as Defendants are required to withhold federal income and Federal

Insurance Contributions Act ("FICA") taxes from their employees' wages and to pay those

withholdings, along with the employer's own FICA and Federal Unemployment Tax Act ("FUTA") taxes, to the Internal Revenue Service ("IRS"). *See* 26 U.S.C. §§ 3102, 3111, 3301, 3402. Employers must make periodic payments of the withheld taxes and their share of employment taxes in an appropriate federal depository bank. *See* 26 U.S.C. §§ 6302, 6157; 26 C.F.R. §§ 31.6302-1, 31.6302(c)-3. Employers are also required to file an employment tax return (Form 941) each quarter and an unemployment tax return (Form 940) annually. *See* 26 C.F.R. §§ 6011, 6071; 26 C.F.R. §§ 31.6011(a), 31.6071(a)-1.

Defendants have had employees who were paid wages subject to federal withholding from at least 2004 through 2018. ECF No. 1 ¶ 7; ECF No. 9-2 ¶ 6. Defendants failed to file the unemployment tax return with the IRS for 2004 and 2009, ECF No. 1 ¶ 15; ECF No. 9-2 ¶ 7, and for 2005, 2013, 2015, 2016, and 2017, they filed the unemployment tax return after the due date, ECF No. 1 ¶ 16; ECF No. 9-2 ¶ 7. Since 2007, Defendants have also filed almost all of their quarterly employment tax returns after the due dates, ECF No. 1 ¶ 17; ECF No. 9-2 ¶ 8, and in 2015 and 2016, they filed all of their quarterly employment tax returns after the due dates. *Id.*

For the past nine years, Defendants rarely made any tax deposits and the deposits that they did make were insufficient to pay the employment taxes. ECF No. 1 ¶ 12; ECF No. 9-2 ¶ 9. As a result of Defendants' failure to honor their tax liabilities, the dental practice has accrued over $110,000 in unpaid employment and unemployment taxes. ECF No. 1 ¶¶ 13, 14; ECF No. 9-2 ¶ 10. As early as 2010, the IRS assigned a revenue officer to collect Defendants' unpaid tax liabilities, obtain unfiled returns, and encourage them to meet their tax obligations in the future. ECF No. 1 ¶ 18; ECF No. 9-2 ¶ 1. Defendants were dilatory in responding to requests for financial information, which led to the issuance of at least one third-party summons, and they would not enter a satisfactory payment agreement. ECF No. 1 ¶ 19; ECF No. 9-2 ¶¶ 11, 12.

2

The IRS has taken various actions to collect Defendants' unpaid tax liabilities, such as sending demands for payment, levying on Defendants' bank accounts, recording Notices of Federal Tax Lien, and determining that seizing their business assets would result in minimal funds. ECF No. 1 ¶¶ 20, 21, 22, 23; ECF No. 9-2 ¶ 13. These actions were unsuccessful in collecting Defendants' unpaid employment tax liabilities, and the IRS could not locate any other assets. ECF No. 1 ¶ 24; ECF No. 9-2 ¶¶ 14, 15. The IRS provided notice to Defendants that a civil injunction might be pursued. ECF No. 1 ¶ 25; ECF No. 9-2 ¶ 16. All of the IRS's administrative efforts have failed to convince Defendants to comply with their tax obligations. ECF No. 1 ¶ 26; ECF No. 9-2 ¶ 17.

The Government filed a Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") in this Court on June 4, 2019. ECF No. 1. Defendants were served on June 13, 2019, and proofs of service were filed on June 19, 2019. ECF No. 6. Defendants failed to file an answer or otherwise respond to the Complaint. The Government subsequently filed a Motion for Clerk's Entry Default on July 11, 2019, ECF No. 7, and the Clerk entered a default against Defendants on August 8, 2019, ECF No. 8. The Government filed its Motion for Default Judgment on August 13, 2019. ECF No. 9.

## II.     STANDARD OF REVIEW

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court." *Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 373 (D. Md. 2012). Although "[t]he Fourth Circuit has a 'strong policy' that 'cases be decided on their merits,'"

*Choice Hotels Intern., Inc. v. Savannah Shakti Carp.*, No. DKC-11-0438, 2011 WL 5118328, at

*2 (D. Md. Oct. 25, 2011) (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir.

1993)), "default judgment may be appropriate when the adversary process has been halted

because of an essentially unresponsive party[.]" *Id.* (citing *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d

418, 421 (D. Md. 2005)).

"Upon default, the well-pled allegations in a complaint as to liability are taken as true,

although the allegations as to damages are not." *Lawbaugh*, 359 F. Supp. 2d at 422. Thus, the

court first determines whether the unchallenged factual allegations constitute a legitimate cause

of action. *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010). In determining

whether the factual allegations constitute a legitimate cause of action, courts typically apply the

*Iqbal/Twombly* pleading standard. *See Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d

531, 544 (D. Md. 2011) (finding *Iqbal* "relevant to the default judgment inquiry"). Under *Iqbal,*

a complaint fails to state a claim entitling the pleader to relief if the complaint offers only

"'labels and conclusions'" or "'naked assertion[s]' devoid of 'further factual enhancement.'"

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555–57 (2007)). As the Fourth Circuit has recognized, "'the court need not accept the legal

conclusions drawn from the facts, and [ ] need not accept as true unwarranted inferences,

unreasonable conclusions, or arguments.'" *Monroe v. City of Charlottesville*, 579 F.3d 380, 385–

86 (4th Cir.2009) (citation omitted), *cert. denied*, 559 U.S. 992 (2010); *accord Simmons v.

United Mortg. & Loan Investment, LLC*, 634 F.3d 754, 768 (4th Cir. 2011). Indeed, "where the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"

*Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

If liability is established, the court then makes an independent determination of damages. *Agora Financial, LLC*, 725 F. Supp. 2d at 494. Fed. R. Civ. P. 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." In entering default judgment, a court cannot, therefore, award additional damages "because the defendant could not reasonably have expected that his damages would exceed th[e] amount [pled in the complaint]." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). While the Court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' District Council Pension, et al. v. E.G.S., Inc.*, No. WDQ–09–3174, 2010 WL 1568595, at *3 (D. Md. Apr. 16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested.").

## III.   DISCUSSION

The Government seeks default judgment on its request for a permanent injunction requiring Defendants to honor their federal tax obligations.[1] Thus, the Court must determine whether the well-pled allegations in the Complaint, accepted as true, support the issuance of a permanent injunction against Defendants.

### A.  Legal Standard

The Government seeks a permanent injunction pursuant to 26 U.S.C. § 7402(a), which grants district courts the ability to "issue in civil actions, writs and orders of injunction … and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the

---

[1] The Complaint seeks only equitable relief, not monetary relief.

internal revenue laws." Section 7402 manifests the "congressional intention to provide the

district courts with a full arsenal of powers to compel compliance with the internal revenue

laws," *Brody v. United States*, 243 F.2d 378, 384 (1st Cir. 1957), and it affords the district courts

broad discretion in procedural matters relating to the enforcement of tax laws, *see United States*

*v. Asay*, 614 F.2d 655, 661–62 (9th Cir. 1980).

"Courts are split as to the standard for granting an injunction pursuant to § 7402(a)."

*United States v. Chesapeake Firestop Prods., Inc.*, Case No. DKC–17–3256, 2018 WL 3729036,

at *3 (D. Md. Aug. 6, 2018). "Most courts, however, appear to have concluded that, under §

7402(a), 'the government need only show that an injunction is appropriate for the enforcement of

the internal revenue laws, *without reference to the traditional equitable factors*.'" *United States*

*v. R & K Tile, Inc.*, Case No. CCB–14–3025, 2015 WL 1736802, at *2 (D. Md. Apr. 14, 2015)

(emphasis in original) (quoting *United States v. Thompson*, 395 F. Supp. 2d 941, 945 (E.D. Cal.

2005)). The Fourth Circuit has not determined which standard applies, but that question need not

be addressed in the present case because an injunction is appropriate under both the standard

described in the statute and traditional equitable principles.

Section 7402(a) expressly authorizes a court to issue an injunction "when necessary or

appropriate for the enforcement of the internal revenue laws." "Such an injunction 'is appropriate

if the defendant is reasonably likely to violate the federal tax laws again,' which courts assess by

evaluating the totality of the circumstances." *R & K Tile, Inc.*, 2015 WL 1736802, at *2 (quoting

*Thompson*, 395 F. Supp. 2d at 945–46). The relevant factors include:

> (1) the gravity of harm caused by the offense; (2) the extent of the
> defendant's participation, and her degree of scienter; (3) the isolated
> or recurrent nature of the infraction and the likelihood that the
> defendant's customary business activities might again involve her
> in such transaction; (4) the defendant's recognition of her own

culpability; and (5) the sincerity of her assurances against future violations.

*Id.* at *3.

Under traditional equitable principles, an injunction would be appropriate if the plaintiff demonstrates:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law … are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Legend Night Club v. Miller*, 637 F.3d 291, 297 (4th Cir. 2011) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

### B. Analysis

Accepting the well-pled allegations in the Complaint as true, Defendants have failed to comply with their federal tax obligations by repeatedly and continually accruing employment and unemployment tax liabilities, filing the corresponding tax returns after the due dates, and failing to pay the appropriate tax amounts. Defendants' conduct has spanned more than a decade, and they continue to skirt their federal tax obligations despite proper notice and demand for payment, bank account levies, and recordation of multiple Notices of Federal Tax Lien. The Government has now exhausted its administrative abilities to compel Defendants to comply with the internal revenue laws. Defendants have also admitted culpability by failing to respond in this case, and they do not appear to have any intention to become compliant with their tax obligations in the future. Accordingly, under the standard articulated in § 7204(a), issuance of a permanent injunction is "necessary and appropriate to enforce the internal revenue laws."

An injunction is similarly appropriate under traditional equitable principles. The Government has suffered, and will continue to suffer, irreparable harm as a result of Defendants'

conduct. "[T]axes are the lifeblood of government, and their prompt and certain availability an imperious need," *Bull v. United States*, 295 U.S. 247, 259 (1935), and Defendants currently owe more than $110,000 in unpaid tax liabilities. Defendants would suffer permanent loss of its tax revenue if Defendants were permitted to continue to refuse to pay over the amounts due. The Government is also harmed because it has expended significant resources attempting to compel Defendants to comply with the tax laws and attempting to collect the federal taxes that Defendants should have deposited. Legal remedies are inadequate to compensate for this injury, as evidenced by Defendants' continued failure to honor their tax obligations, despite proper notice and demand, and the Government's repeated attempts to collect payment.

Next, the balance of hardships between the Government and Defendants weighs in favor of granting an injunction. If an injunction is not issued against Defendants, the Government will continue to suffer irreparable harm in the form of permanent loss of its tax revenue and the continued expense of attempting to collect the unpaid taxes and compel Defendants to comply with the law. In contrast, if an injunction is issued against Defendants, they will not be harmed because they will simply be required to obey the same tax laws as other employers.

Finally, an injunction would not be contrary to the public interest. "The tax system relies on employers to collect employment and unemployment taxes and to pay those over to the United States." *Chesapeake Firestop Prods., Inc.*, 2018 WL 3729036, at \*4 (quoting *United States v. J.A. Subway, Inc.*, Case No. GLR–16–0810, 2016 WL 6988800, at \*4 (D. Md. Sept. 23, 2016)) (internal quotations omitted). Defendants' repeated failure to comply with federal tax laws is undermining the tax system, and enjoining Defendants to comply will lead to "fair administration of the internal revenue laws" and "fair competition by halting these wrongful

practices." *Id.* (internal quotations omitted). Accordingly, all equitable factors support entry of a permanent injunction against Defendants.

Because the well-pled allegations in the Complaint support the issuance of a permanent injunction under either standard, the Government is entitled to default judgment on its request for a permanent injunction against Defendants. The preliminary injunction will enjoin Defendants to deposit required taxes in an appropriate federal depository bank, provide proof to the IRS that the required deposits have been made, timely file tax returns, and notify the IRS of any future employment tax conduct with respect to any new or presently unknown company that Defendant Ulysses Martin, Jr. may become involved with, and it will prohibit Defendants, for a period of five years, from assigning any property or making any payments until all required taxes are first properly deposited or paid to the IRS.[2]

## IV.    CONCLUSION

For the foregoing reasons, the Government's Motion for Default Judgment is granted, and a permanent injunction will be entered against Defendants. A separate Order shall issue.

Date: <u>December    5, 2019</u>                    <u>    /s/                                      </u>
                                                                            GEORGE J. HAZEL
                                                                            United States District Judge

---

[2] The accompanying Order includes the specific components of the preliminary injunction. The Order does not contain any relief that differs in kind or exceeds the relief requested in the Complaint.